Good morning, Your Honors. My name is Jan Bejar and I represent Mr. Pedro Villa-Valladolid. The issue in this matter is whether Mr. Villa's due process rights were violated and whether he suffered prejudice as a consequence. At our initial master calendar held in July of 2002, the immigration judge was told by me and by counsel for the government that we were aware of a prior rescission proceeding that had been brought against Mr. Villa several years earlier and that we both agreed that it was no longer an issue as the time had lapsed for that to be effective. The government specifically told the court on the record that it would not be pursuing that matter. The judge said that he would set the case over to another master calendar hearing, which is a preliminary or an arraignment type of hearing, and that he would retrieve the old record from the archives. He would take a he determined that there were any issues that they would be brought to the party's attentions and, quote, they shall be fully litigated if necessary. At the next master calendar hearing, which was approximately two months later in September of 2002, the judge took the bench and announced without any argument or anything that or any notice that he found that the record showed that the evidence against Mr. Villa was sufficient to find that there was no relief available to him and provided no opportunity to litigate in the terms that he had previously suggested or grant a continuance, which was requested numerous times. But let's assume that we agree that your client was denied due process. How was he prejudiced in this particular case? Well, okay, that's the second part of my argument. Mr. Villa was prejudiced because he was completely unable to argue for any relief from deportation. Why did you show that he would have argued? I'm sorry? What would he have argued? Did he make a showing of what he was precluding from arguing? Yes, Your Honor. Mr. Villa would have argued that he was eligible for, at a minimum, 212C relief. That also I pointed out to the judge that he might be eligible for adjustment status and a 212H waiver or a 237A1H waiver in conjunction with the 212C. Why doesn't the Monet case control this case? Well, the Monet case is very similar, but it has some important distinctions. Monet adjusted status just as Mr. Villa did. However, the government never sought to, and the government could have brought rescission proceedings against Monet, because in terms of his having adjusted, that's the same as what Mr. Villa did. The rescission proceedings would have terminated the status non-protonque in Mr. Villa's case as well as in Mr. Monet's. Rescission proceedings were brought in Mr. Villa's case. In fact, Your Honor, the government, unlike in Monet, where they did not become aware of the prior illegal activity until seven or eight years after he had adjusted, in Mr. Villa's case, they were fully aware. And in fact, chronologically speaking, Mr. Villa applied for amnesty in 1988. He eventually got his green card granted in September of 1991. In 1989, almost two years prior, he was 19 years old, got arrested for the marijuana charge. At that time, while he was still in custody, because of the marijuana charge, he had not been convicted. The government, the Immigration Service, placed a detainer on him. So they were fully aware that he was an alien, that he was in custody, and that there was a marijuana issue. He was convicted in 1990. He got his green card in 1991. Unlike Monet, he did not misrepresent. I have reviewed the application that Mr. Villa submitted to the government, to the INS, back in 1989. And there is a question that asks, have you ever been arrested or convicted, or are you a drug trafficker? And that question was specifically left blank. He did not misrepresent, as in saying, no, I have not. He simply left it blank. He was interviewed, and in his adjustment context, and the government chose not to explore it. Had they explored it, and had... So was your argument one of estoppel? I thought we were talking about prejudice. The problem I'm having with your argument is, as I understand the facts, although he obtained an adjustment, he was not, it's not a valid adjustment. He wasn't legally entitled to it. Now what I hear you arguing is that the INS should be stuck with that, because of the fact that, you know, they had notice, but they didn't rescind or take action in a timely fashion. You know, there's two different statutes that enter into this, the rescission statute and the deportation statute. Now clearly the rescission statute, which is a drastic statute, says you want to cancel this person's adjustment ab initio, go ahead and do it. You must do it within five years. Why? Because it's a very drastic thing. It goes back to the date of admission. In the deportation context, this is very similar to a dissolution of marriage. You want an annulment. You have five grounds that you can pick from. And if you don't fit into those, you can still get divorced, but you're going to be stuck with a divorce and it's not ab initio. It's today when you get divorced. Well, this is the same situation in a deportation matter. There are several cases, including Ferughi in the Ninth Circuit and Locke from the BIA, that say that the status terminates when the hammer drops. In other words, when the final administrative decision is issued. In this case, that decision was issued in 2002, not ab initio in 1990 or 1991. So he did accrue time as a permanent resident. This court has. Doesn't the stop clock rule apply? No, Your Honor. The stop clock rule came as a consequence of ERIRA in effective April 1 of 1997. All this happened way prior to 1997. Proceedings commenced before that, and therefore the stop clock. The proceedings. Well, there were three different proceedings, Your Honor. And I guess let me ask the question a different way. Is it your position that the stop clock rule doesn't apply at all? It does not apply at all for one simple reason. We're not talking to 48. We're talking to 12 C to 12 C was brought back by Saints here. No stop clock provision applied. This court specifically held in Monet that Monet was admitted as a permanent resident. Monet is clearly an alien admitted for permanent residence since his status has not been rescinded. So if it has not been rescinded, he is a permanent resident. By the same token, Mr. Villa. His status was never rescinded, although the government had every opportunity to do it. They when when the rescission proceedings were dismissed without prejudice in 1995, January of January, April of 1995, they still had 18 months on that five year statute to act. They decided not to do it. Seven years later, they bring the removal proceedings, which are what happened today. So why is he eligible for 212 C? Because he has accumulated more than seven years of permanent residence and domicile in the United States in that period. And with the court's permission, I'll reserve whatever time I have left. Very well. Thank you, Mr. Mayor. Good morning, Your Honor. So I didn't I did not introduce myself last time. I'm Sam Betwee for the government. May it please the court. Question. A couple of questions. What is the even if it is clear from the record that the immigration judge did surprise both the government and the respondent with his analysis. But then the question is, what is the what is the prejudice? Or really, is there is there an abuse of discretion or violation of due process when all that was at issue was a legal question? It wasn't that the alien was not permitted to present evidence. And there was an opportunity to make the argument at the BIA. And in fact, the argument was not really made at the BIA. I'm looking at the supplemental excerpts of record. The closest the closest that respondent came to raising the argument was a page 11. But this argument that rescission proceedings were required was just not made to the BIA. And this as your your honor pointed out, I mean, the argument would have to be logically that there's some kind of an estoppel for the government not being or being aware of the conviction, but not having done anything about it. I just don't see how the elements of estoppel are not here. They haven't been raised. They haven't been alleged that there was some kind of misconduct, for example. And that I've seen in our case law is usually that an INS official gave the alien bad advice. And on the basis of that, he relied to his detriment. And here the argument is I was surprised when the immigration judge told me what the law was and refused to proceed further as a result of his reading of my prior file. It is I understand that. Yes, your honor. And related to that, when asked what would the arguments have been, the arguments which were not made in the opening brief. So I think I should respond quickly here that 237A1H would apply, but it doesn't apply because he was not otherwise admissible because he had that conviction. 237A1H only waives the fraudulent entry. It doesn't waive any prior conviction. The purpose of that waiver has to do with visa fraud, not with prior convictions. In the Sosa, the matter of Sosa Hernandez case, that alien was not otherwise inadmissible. So that's not that case doesn't apply here. The other I mean, the statute itself says he has to be otherwise admissible. So the other one, whether he could apply with an adjustment application. Again, that's a bootstrap because you can't apply for adjustment. You can't apply for 212C with the adjustment application because he's not eligible for 212C because he's not a lawful permanent resident, which brings us back to Monet and what and why why shouldn't Monet control here. And 212H, again, that was not made that argument was not made to the BIA and it was not made in the opening brief. But that only forgives possession of 30 grams or less of marijuana. It doesn't forgive fraudulent entry. All it might forgive is the burglary, but that's not that's not the issue here. So that doesn't apply. Well, if there are no more questions, I don't think we have anything more. All right. Thank you, Your Honors. Thank you, Your Honors. First, with regards to I was surprised because the judge told me that he had reviewed my file and told me what the law was. That's not exactly what happened. This is more akin to a criminal court finding at an arraignment hearing that he has. The judge has reviewed the evidence that the government intends to submit or the complaint or the arguments and says, you know what? This guy doesn't have a leg to stand on. Why take it to a jury? Why waste the time? This court under no circumstances would countenance that kind of behavior from a criminal court. And it should not countenance it from an immigration court. The point is, I guess the government's response to that is, you know, OK, we were all surprised. But where's the prejudice here if he was not, in fact, eligible for the relief that you say he wanted to apply for? The prejudice is very simple. The prejudice is he was, in fact, eligible and remains eligible for 212C because of these distinctions that I have just presented in Monet. The status, the immigration judge ruled that he did not have any way to proceed because he didn't think he was eligible for 212C. What he needed for 212C were two things, lawfully here for seven years and to prove that he was a lawful permanent resident. If he had filled in the blank that he didn't fill in, what would have been the consequence? The consequence would be that the officer would have looked at it and made a discretionary finding, probably denying him because he would have been ineligible to adjust. Do you think he suspected that when he left the blank? Your Honor, he was very young. He was about 19 years old. I don't think that he suspected anything. He had a reason for not including the information which he knew would be detrimental to him if it had been brought to him. If I were to speculate, I would speculate that... We don't have to speculate. We just look at the record. If I... But you're asking me a question that I think calls... The basis goes to the question of prejudice. If he knew or had reason to know or could have known, how is he prejudiced? Your Honor, because he was granted permanent residence regardless of whether it was proper or improper. When it was granted and the government was on notice and failed to properly pursue the rescission proceedings, at that point, because they didn't do that and he was a permanent resident, it continued until such time in 2002 when he was finally ordered deported. So he was eligible for 212C. That is the prejudice. That is what would have been briefed to the immigration judge had he given us the opportunity to do it instead of just blowing us off at the master calendar hearing. Your Honor, you are out of time. Thank you very much. Thank you. The case just argued is submitted. And we will next hear argument in the case of... I'm sorry. All right. We'll next hear argument in the case of...
judges: Farris, D.W. Nelson, Tallman